**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | |
|---|---|
| ERIE INSURANCE COMPANY, as subrogee of Anthony Liakonis and Lori Liakonis, | * * * |
| Plaintiff, | * * No. _____ * |
| v. | * * |
| ELECTROLUX HOME PRODUCTS, INC., ELECTROLUX NORTH AMERICA, INC., GD MIDEA AIR CONDITIONING EQUIPMENT, LTD., MIDEA GROUP CO., LTD., MIDEA AMERICA CORPORATION, and MIDEA INTERNATIONAL TRADING CO., LTD., | * * * * * * |

## COMPLAINT FOR DAMAGES

Plaintiff, Erie Insurance Company, by and through its counsel, and as subrogee of Anthony Liakonis and Lori Liakonis, hereby files this Complaint against Defendants, Electrolux Home Products, Inc., Electrolux North America, Inc., GD Midea Air Conditioning Equipment Ltd., Midea Group Co., Ltd., Midea America Corporation, and Midea International Trading Co., Ltd., and alleges the following:

## THE PARTIES

1.      Plaintiff, Erie Insurance Company ("Erie"), is and has been at all material times a company organized and existing under the laws of the Commonwealth of Pennsylvania, and is authorized to issue policies of insurance, including to residents of the State of Tennessee.

2.      Defendant, Electrolux Home Products Inc., is and has been at all material times a corporation organized and existing under the laws of the State of Delaware, with a principal address of 10200 David Taylor Drive, Charlotte, North Carolina 29262-2373, the registered

agent for which in Tennessee is CT Corporation System, 300 Montvue Road, Knoxville, TN 37919-5546.

3.      Defendant, Electrolux North America, Inc., is and has been at all material times a corporation organized and existing under the laws of the State of Ohio, with a principal address of 10200 David Taylor Drive, Charlotte, North Carolina 29262-2373, the registered agent for which is North Carolina is CT Corporation System, 160 Mine Lake Ct Ste 200, Raleigh, NC 27615-6417 and the registered agent for which in Ohio is CT Corporation System, 400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

4.      Defendant, GD Midea Air Conditioning Equipment Ltd., of China, is and has been at all material times a business entity formed and headquartered in China, whose addresses are: No. 6 Midea Avenue, Lingang Road, Foshan City, Guangdong Province, The People's Republic of China 528311, and/or Midea Industrial City Beijiao Town Shunde District Foshan, 528311, The People's Republic of China.

5.      Defendant Midea Group Co., Ltd., is and has been at all material times a business entity formed and headquartered in China, whose addresses are: No. 6 Midea Avenue, Lingang Road, Foshan City, Guangdong Province, The People's Republic of China 528311, and/or Midea Industrial City Beijiao Town Shunde District Foshan, 528311, The People's Republic of China.

6.      Defendant, Midea USA, Inc., is and has been at all material times a corporation organized and existing under the laws of the State of Texas with headquarters at 1937 N. Great SW Parkway, Grand Prairie, TX 75050 and/or 2617 N Great Southwest Pkwy, Grand Prairie, TX 75050.

7.      Defendant, Midea America Corporation, is and has been at all material times a corporation organized and existing under the laws of the State of Florida with a principal address

of 11411 NW 107th, Suite 12, Miami, FL 33178, the registered agent for which is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301. The Vice President, Treasurer, Secretary, President, and Director is Marianna Zhao, No. 6 Midea Avenue, Beijiao, Shunde, Foshan City, Guangdong P.R. 528311 CN. An authorized person to receive service of process is also Kurt Andrew Jovais, 11411 NW 107th, Suite 12, Miami, FL 33178.

8.      Defendant Midea International Trading Co., Ltd., is and has been at all material times a business entity formed and headquartered in China, whose address is Unit 3905-11, 39/F, Tower 6, The Gateway, Harbour City, 9 Canton Road, Tsim Sha Tsui Kowloon, Hong Kong.

## JURISDICTION

9.      This Court has subject matter jurisdiction of this action in that the events giving rise to this action occurred in Knox County, Tennessee, the property that is the subject of this lawsuit (9211 Ridges Meadow Lane, Knoxville, TN 37931 owned by Anthony Liakonis and Lori Liakonis) has been at all material times located in Knox County, there is complete diversity of citizenship between the Plaintiff and the Defendants, and damages are in excess of $75,000.

10.     This Court has personal jurisdiction over the Defendants as the events and damages giving rise to this action occurred due to a defective product in the home of Anthony Liakonis and Lori Liakonis, at 9211 Ridges Meadow Lane, Knoxville, TN 37931, located in Knox County, Tennessee.

11.     Defendants regularly conduct substantial business in Tennessee, including the sale and distribution of dehumidifiers in Knox County, Tennessee.

12.     In addition, Defendants have sufficient contacts in the State of Tennessee to subject them to the jurisdiction of this Court under Tennessee's "Long Arm Statute," Tennessee Code section 20-2-233, in that each Defendant:

(a) transacts business in Tennessee;
(b) contracts to supply services or things in Tennessee;
(c) caused tortious injury by an act or omission in Tennessee;
(d) caused tortious injury in Tennessee by an act or omission outside this state;
(e) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Tennessee; and/or
(f) has an interest in, uses or possesses real property in this state.

13.     Bringing suit against the Defendants in this County does not offend traditional notions of fair play and substantial justice in that each Defendant purposefully sold and/or distributed its product in Tennessee and each Defendant purposefully availed itself of the benefit of the laws of the State of Tennessee when it sold and/or distributed its product in this State for a business purpose.

## VENUE

14.     Venue is proper in this Court in that the events or omissions giving rise to this action occurred in Knox County, Tennessee, and the property that is the subject of the action has at all times been located at the home of Anthony Liakonis and Lori Liakonis, at 9211 Ridges Meadow Lane, Knoxville, TN 37931, located in Knox County, Tennessee.

## BACKGROUND FACTS

15.     This matter involves a fire loss of July 25, 2018 ("the fire" or "the subject incident") at a home owned by Anthony Liakonis and Lori Liakonis at 9211 Ridges Meadow Lane, Knoxville, TN 37931 ("the subject home").

16.     The fire originated from a Frigidaire brand dehumidifier, Model LAD504DUL, Serial KN10304958 (hereinafter "the dehumidifier" or "the subject product").

17.     The dehumidifier had been purchased by the first retail purchaser on October 3, 2011 at a Lowe's Home Center at 210 N. Peters Road, Knoxville, TN 37923.

18.    October 3, 2011 is the date that the product was first purchased for use or

consumption.

19.    The product literature indicates that the Frigidaire brand was manufactured by

Electrolux Home Products.

20.    In 2016, the Consumer Product Safety Commission issued a recall, Recall no. 17-

039, that included this particular dehumidifier.

21.    The recall states:

Recall Summary
Name of Product: Dehumidifiers. See Description below.
Hazard: The dehumidifiers can overheat, smoke and catch fire, posing serious fire
and burn hazards.
Remedy: Replace/Refund.
Consumers should immediately turn off and unplug the dehumidifiers and contact
GD Midea for either a replacement unit or a partial refund. Consumers whose
dehumidifiers were manufactured before October 1, 2008 will receive a partial
refund, not a replacement. The manufacturing dates can be found on back of units.
Consumer Contact: To register and determine if you are eligible for this program,
enter your unit's brand, model, and serial number into the tool at the bottom of
this page. If your unit is one of the recalled units you will then be able to verify
that you are human by checking the box in the Captcha tool then clicking the
Register Now button.
Recall Details
Units: About 3.4 million (in addition 850,000 were sold in Canada)
Description: This recall involves 25, 30, 40, 50, 60, 65, 70, and 75-pint
dehumidifiers with the following brand names: Airworks, Alen, Arctic King,
Arcticaire, Beaumark, Comfort Star, ComfortAire, Continental Electric,
Coolworks, Crosley, Daewoo, Danby, Danby Designer, Dayton, Degree,
Diplomat, Edgestar, Excell, Fellini, Forest Air, Frigidaire, GE, Grunaire,
Hanover, Homestyles, Honeywell, Hyundai, Ideal Air, Kenmore, Keystone, Kul,
Midea, Nantucket, Ocean Breeze, Pelonis, Perfect Aire, Perfect Home, Polar
Wind, Premiere, Professional Series, Royal Sovereign, Simplicity, SPT,
Sunbeam, Sylvania, TGM, Touch Point, Trutemp, Uberhaus, Westpointe, Winix,
and Winixl.
Incidents/Injuries: Midea has received 38 reports of smoke and fire. About $4.8
million property damage has been reported. No injuries have been reported.
Sold at: Lowes, Menards, PC Richard and other stores nationwide from January
2003 through December 2013 for between $100 and $300.
Manufactured in: GD Midea Air Conditioning Equipment Ltd., of China

22.     No one communicated this recall to the Liakonis's, before or after the fire.

23.     Nowhere on the product or within the product literature is there mention of the name of the entity in China believed to have actually manufactured the product, GD Midea Air Conditioning Equipment Ltd., of China.

24.     At the time of the fire, the dehumidifier was situated on the floor of the storage room in the basement level of the subject home.

25.     At the time of the fire, Nic Liakonis, the son of Anthony and Lori Liakonis, was in the house alone with their dog (Buddy) and cat (Eggnog).

26.     Anthony and Lori Liakonis were on vacation at Turks and Caicos Island.

27.     Nic Liakonis had been asleep in bed that morning, with Buddy and Eggnog nearby.

28.     At around 7:00 a.m.. or later, Nic Liakonis woke up to the sound of the smoke detector alarm going off inside the house.

29.     He thought it was a battery issue but then the dog started barking, so he got up to investigate.

30.     This house has three levels: an upstairs, a downstairs, and a walk-out basement.

31.     Nic Liakonis had been sleeping upstairs.

32.     When he went downstairs, he saw smoke coming up from the vents on the first level, indicating there was a fire in the basement level.

33.     He could also seek smoke coming out of the basement door.

34.     He ran down the steps to the basement, turned the corner to the right, and saw fire in the storage room.

35.     The fire was in the middle of the storage room coming up from the floor where the dehumidifier was and the fire was moving upward from the floor to the ceiling.

36.     At that stage of the fire, the dehumidifier was the only thing on fire and the only thing in the middle of the floor.

37.     Once he saw the fire, he ran back upstairs, got the fire extinguisher from the garage, and went back downstairs to try to put out the fire.

38.     He pulled the pin to the fire extinguish but the extinguisher did not work.

39.     He then ran back upstairs, got the dog, put the dog on the leash, brought him outside, and went back inside to find cat.

40.     He could not find the cat.

41.     He got his phone, went back outside, and called 911.

42.     Later, one of the firefighters found his cat hiding under bed, still alive.

43.     They had to give the cat oxygen, but it ultimately survived.

44.     The fire caused significant damages to the structure, interior, and contents of the home and caused the family to be displaced from the home for a significant period of time, thus incurring additional living expenses.

45.     The cause of the fire was a manufacturer's defect in the dehumidifier, which would allow the product to overheat, smoke, and catch fire.

46.     There is no evidence of abuse of the subject product by its owners and/or users.

47.     Prior to the fire, Erie issued a policy to and for the benefit of Anthony Liakonis and Lori Liakonis in the event of damages to the subject home such as the damages from the subject incident.

48.     After the fire, the Anthony Liakonis and Lori Liakonis made a claim with Erie for the resulting property damages and loss of use of their house and contents.

49.     Within days of the fire, Erie sent a notice letter to Electrolux Home Products Inc. and Electrolux North America, Inc.

50.     The Electrolux entities then retained attorney Benjamin Harwell of the firm of Ward Greenberg, 1835 Market Street, Suite 650, Philadelphia, PA 19103.

51.     A joint scene inspection was arranged and took place on August 6, 2018, at which the Electrolux entities had representation to investigate the origin and cause.

52.     The Electrolux entities also participated in a later lab examination of the retained evidence on October 17, 2018.

53.     The origin of the fire was confirmed to be at the dehumidifier.

54.     At no point did anyone from the Electrolux entities indicate that GD Midea Air Conditioning Equipment Ltd., of China played any role in manufacturing the dehumidifier.

55.     Erie has paid a total of $667,432.36, broken down as $349,040.30 for damages to the dwelling, $233,975.31 in damages to personal property, and $84,416.75 in loss of use of the home during the time needed to complete repairs.

56.     Erie is subrogated to the insured's rights to pursue claims against those at fault for the damages to the extent of Erie's payments.

57.     Erie brings this subrogation claim against the defendants to the extent of its payments under the policy on the basis of conventional subrogation.

## COUNT I AGAINST ELECTROLUX HOME PRODUCTS, INC.: NEGLIGENT DESIGN AND MANUFACTURE

58.     Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

59.     This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

60.     The term "the subject product" refers to the dehumidifier described above.

61.     Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

62.     The subject product is the type of product that the defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

63.     As the manufacturer and seller of the subject product, this defendant had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

64.     This duty extended to all reasonably foreseeable users or consumers of the subject product and those who could be damaged from it, including the Liakonis's.

65.     The subject product had a defect that makes it susceptible to failure in the form of overheating and fire and that defect manifested itself prior to and during the subject incident.

66.     It was reasonably foreseeable to defendant that this product would fail in the manner that it did and that if it did fail, the failure would result in damages to and the loss of use of real and personal property of homeowners such as the Liakonis's.

67.     These defects did in fact lead to the subject incident, resulting in damages to and the loss of use of the Liakonis's' real and personal property.

68.     Given its superior knowledge of the product defects and inherent risk of the danger involved in its continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

69.     Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.      designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer or installer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

g.      otherwise failed to use due care under the circumstances.

70.     The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of the defendant.

71.     The defendant was given reasonable notice of the loss and the claim of defect after the subject incident.

72.     This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

73.     As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage

losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT II AGAINST ELECTROLUX HOME PRODUCTS, INC.: NEGLIGENT FAILURE TO WARN

74.     Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

75.     This count is asserted in the alternative to all other counts and none of the allegations of those counts are intended to be incorporated into this count.

76.     The term "the subject product" refers to the dehumidifier described above.

77.     Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

78.     The subject product is the type of product that defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

79.     As the manufacturer and seller of the subject product, and having superior knowledge of the product defects and inherent risk of the danger involved in their continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

80.     This duty extended to reasonably foreseeable users of the subject product, including the Liakonis's.

81.     The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of defendant.

82.     This defect was known to and anticipated by defendant prior to the subject incident.

83.     Well before the fire, this Defendant became aware that this was one of many Chinese-manufactured dehumidifiers that was subject to a recall.

84.     Having become aware that the product was causing fires, this Defendant had an additional duty to take reasonable steps to notify purchasers of the product that it posed a fire hazard.

85.     This duty reasonably extended to the Liakonis family.

86.     Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.      designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

g.      failed to take steps to notify the consumers of the fire hazard posed by the product; and

otherwise failed to use due care under the circumstances.

87.     This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

88.     As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT III AGAINST ELECTROLUX HOME PRODUCTS, INC.: STRICT LIABILITY

89.     Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

90.     This count is in the alternative to all other counts, none of which are incorporated herein.

91.     The term "the subject product" refers to the dehumidifier described above.

92.     Defendant designed, manufactured, sold, and/or marketed the subject product.

93.     Defendant distributed and placed the subject product into the stream of commerce.

94.     Plaintiff's insureds were users and/or consumers of the subject product.

95.     The subject product was the type of product that defendant was engaged in the business of selling.

96.     Defendant expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

97.     The subject product reached the user or consumer without substantial change in the condition in which it was sold.

98.     Plaintiff's insureds used the subject product for the purpose and in the manner for which the subject product was designed and intended.

99.     The subject product that defendant sold or distributed to Plaintiff's insureds remained unmodified and unaltered from the date of its distribution and sale by defendant.

100.    On the date of the subject incident, the subject product failed and initiated a fire from the subject product.

101.    At all times since the subject product left the control of defendant, and at all times up to and including the date of the subject incident, the subject product was defective and unreasonably dangerous for the reasons set forth above.

102.    This defective and unreasonably dangerous condition resulted in the subject incident as alleged above.

103.    The subject product could have been sold or provided with an alternative design without substantially impairing the usefulness, practicality, or desirability of the subject product.

104.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

105.    As a direct and proximate result of the unreasonably defective and dangerous condition as set forth in the foregoing paragraphs, the subject product initiated a fire, causing extensive damage to Plaintiff's insureds' property.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT IV AGAINST ELECTROLUX HOME PRODUCTS, INC.: BREACH OF EXPRESS WARRANTY

106. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

107. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

108. The term "the subject product" refers to the dehumidifier described above.

109. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

110. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

111. In the event that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an express warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such an express warranty warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

112. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

113.    The subject product contained the defect when it left defendant's possession and control.

114.    The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

115.    Defendant breached the any alleged express warranty by providing the product with the defect described above.

116.    Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

117.    As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT V AGAINST ELECTROLUX HOME PRODUCTS, INC.: BREACH OF IMPLIED WARRANTY

118.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

119.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

120.    The term "the subject product" refers to the dehumidifier described above.

121.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

122.    This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

123.    In the event of that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an implied warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such a warranty impliedly warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

124.    The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

125.    The subject product contained the defect when it left defendant's possession and control.

126.    The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

127.    Defendant breached the any alleged implied warranty by providing the product with the defect described above.

128.    Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

129.    As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT VI AGAINST ELECTROLUX NORTH AMERICA, INC.: NEGLIGENT DESIGN AND MANUFACTURE

130.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

131.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

132.    The term "the subject product" refers to the dehumidifier described above.

133.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

134.    The subject product is the type of product that the defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

135.    As the manufacturer and seller of the subject product, this defendant had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

136.    This duty extended to all reasonably foreseeable users or consumers of the subject product and those who could be damaged from it, including the Liakonis's.

137.    The subject product had a defect that makes it susceptible to failure in the form of overheating and fire and that defect manifested itself prior to and during the subject incident.

138.   It was reasonably foreseeable to defendant that this product would fail in the manner that it did and that if it did fail, the failure would result in damages to and the loss of use of real and personal property of homeowners such as the Liakonis's.

139.   These defects did in fact lead to the subject incident, resulting in damages to and the loss of use of the Liakonis's' real and personal property.

140.   Given its superior knowledge of the product defects and inherent risk of the danger involved in its continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

141.   Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.      designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer or installer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

g.      otherwise failed to use due care under the circumstances.

142.   The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of the defendant.

143.   The defendant was given reasonable notice of the loss and the claim of defect after the subject incident.

144.   This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

145.   As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT VII AGAINST ELECTROLUX NORTH AMERICA, INC.: NEGLIGENT FAILURE TO WARN

146.   Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

147.   This count is asserted in the alternative to all other counts and none of the allegations of those counts are intended to be incorporated into this count.

148.   The term "the subject product" refers to the dehumidifier described above.

149.   Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

150.    The subject product is the type of product that defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

151.    As the manufacturer and seller of the subject product, and having superior knowledge of the product defects and inherent risk of the danger involved in their continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

152.    This duty extended to reasonably foreseeable users of the subject product, including the Liakonis's.

153.    The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of defendant.

154.    This defect was known to and anticipated by defendant prior to the subject incident.

155.    Well before the fire, this Defendant became aware that this was one of many Chinese-manufactured dehumidifiers that was subject to a recall.

156.    Having become aware that the product was causing fires, this Defendant had an additional duty to take reasonable steps to notify purchasers of the product that it posed a fire hazard.

157.    This duty reasonably extended to the Liakonis family.

158.    Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.      designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

g.      failed to take steps to notify the consumers of the fire hazard posed by the product; and

otherwise failed to use due care under the circumstances.

159.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

160.    As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT VIII AGAINST ELECTROLUX NORTH AMERICA, INC.: STRICT LIABILITY

161.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

162.    This count is in the alternative to all other counts, none of which are incorporated herein.

163.    The term "the subject product" refers to the dehumidifier described above.

164.    Defendant designed, manufactured, sold, and/or marketed the subject product.

165.    Defendant distributed and placed the subject product into the stream of commerce.

166.    Plaintiff's insureds were users and/or consumers of the subject product.

167.    The subject product was the type of product that defendant was engaged in the business of selling.

168.    Defendant expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

169.    The subject product reached the user or consumer without substantial change in the condition in which it was sold.

170.    Plaintiff's insureds used the subject product for the purpose and in the manner for which the subject product was designed and intended.

171.    The subject product that defendant sold or distributed to Plaintiff's insureds remained unmodified and unaltered from the date of its distribution and sale by defendant.

172.    On the date of the subject incident, the subject product failed and initiated a fire from the subject product.

173.    At all times since the subject product left the control of defendant, and at all times up to and including the date of the subject incident, the subject product was defective and unreasonably dangerous for the reasons set forth above.

174.    This defective and unreasonably dangerous condition resulted in the subject incident as alleged above.

175.    The subject product could have been sold or provided with an alternative design without substantially impairing the usefulness, practicality, or desirability of the subject product.

176.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

177.    As a direct and proximate result of the unreasonably defective and dangerous condition as set forth in the foregoing paragraphs, the subject product initiated a fire, causing extensive damage to Plaintiff's insureds' property.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT IX AGAINST ELECTROLUX NORTH AMERICA, INC.: BREACH OF EXPRESS WARRANTY

178.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

179.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

180.    The term "the subject product" refers to the dehumidifier described above.

181.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

182. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

183. In the event that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an express warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such an express warranty warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

184. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

185. The subject product contained the defect when it left defendant's possession and control.

186. The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

187. Defendant breached the any alleged express warranty by providing the product with the defect described above.

188. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

189. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT X AGAINST ELECTROLUX NORTH AMERICA, INC.: BREACH OF IMPLIED WARRANTY

190. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

191. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

192. The term "the subject product" refers to the dehumidifier described above.

193. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

194. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

195. In the event of that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an implied warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such a warranty impliedly warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

196. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

197.    The subject product contained the defect when it left defendant's possession and control.

198.    The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

199.    Defendant breached the any alleged implied warranty by providing the product with the defect described above.

200.    Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

201.    As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.


## COUNT XI AGAINST GD MIDEA AIR CONDITIONING EQUIPMENT, LTD: NEGLIGENT DESIGN AND MANUFACTURE

202.     Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

203.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

204.    The term "the subject product" refers to the dehumidifier described above.

205.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

206.     The subject product is the type of product that the defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

207.     As the manufacturer and seller of the subject product, this defendant had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

208.     This duty extended to all reasonably foreseeable users or consumers of the subject product and those who could be damaged from it, including the Liakonis's.

209.     The subject product had a defect that makes it susceptible to failure in the form of overheating and fire and that defect manifested itself prior to and during the subject incident.

210.     It was reasonably foreseeable to defendant that this product would fail in the manner that it did and that if it did fail, the failure would result in damages to and the loss of use of real and personal property of homeowners such as the Liakonis's.

211.     These defects did in fact lead to the subject incident, resulting in damages to and the loss of use of the Liakonis's' real and personal property.

212.     Given its superior knowledge of the product defects and inherent risk of the danger involved in its continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

213.     Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.     designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.     failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer or installer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

g.      otherwise failed to use due care under the circumstances.

214.    The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of the defendant.

215.    The defendant was given reasonable notice of the loss and the claim of defect after the subject incident.

216.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

217.    As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XII AGAINST GD MIDEA AIR CONDITIONING EQUIPMENT, LTD.: NEGLIGENT FAILURE TO WARN

218.  Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

219.  This count is asserted in the alternative to all other counts and none of the allegations of those counts are intended to be incorporated into this count.

220.  The term "the subject product" refers to the dehumidifier described above.

221.  Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

222.  The subject product is the type of product that defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

223.  As the manufacturer and seller of the subject product, and having superior knowledge of the product defects and inherent risk of the danger involved in their continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

224.  This duty extended to reasonably foreseeable users of the subject product, including the Liakonis's.

225.  The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of defendant.

226.  This defect was known to and anticipated by defendant prior to the subject incident.

227.  Well before the fire, this Defendant became aware that this was one of many Chinese-manufactured dehumidifiers that was subject to a recall.

228.    Having become aware that the product was causing fires, this Defendant had an additional duty to take reasonable steps to notify purchasers of the product that it posed a fire hazard.

229.    This duty reasonably extended to the Liakonis family.

230.    Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.    designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.    failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.    failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.    failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.    failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the subject product;

f.    failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

g.    failed to take steps to notify the consumers of the fire hazard posed by the product; and

otherwise failed to use due care under the circumstances.

231.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

232.	As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XIII AGAINST GD MIDEA AIR CONDITIONING EQUIPMENT, LTD.: STRICT LIABILITY

233.	Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

234.	This count is in the alternative to all other counts, none of which are incorporated herein.

235.	The term "the subject product" refers to the dehumidifier described above.

236.	Defendant designed, manufactured, sold, and/or marketed the subject product.

237.	Defendant distributed and placed the subject product into the stream of commerce.

238.	Plaintiff's insureds were users and/or consumers of the subject product.

239.	The subject product was the type of product that defendant was engaged in the business of selling.

240.	Defendant expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

241.	The subject product reached the user or consumer without substantial change in condition in which it was sold.

242.	Plaintiff's insureds used the subject product for the purpose and in the manner for which the subject product was designed and intended.

243. The subject product that defendant sold or distributed to Plaintiff's insureds remained unmodified and unaltered from the date of its distribution and sale by defendant.

244. On the date of the subject incident, the subject product failed and initiated a fire from the subject product.

245. At all times since the subject product left the control of defendant, and at all times up to and including the date of the subject incident, the subject product was defective and unreasonably dangerous for the reasons set forth above.

246. This defective and unreasonably dangerous condition resulted in the subject incident as alleged above.

247. The subject product could have been sold or provided with an alternative design without substantially impairing the usefulness, practicality, or desirability of the subject product.

248. This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

249. As a direct and proximate result of the unreasonably defective and dangerous condition as set forth in the foregoing paragraphs, the subject product initiated a fire, causing extensive damage to Plaintiff's insureds' property.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XIV AGAINST GD MIDEA AIR CONDITIONING EQUIPMENT, LTD.: BREACH OF EXPRESS WARRANTY

250. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

251.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

252.    The term "the subject product" refers to the dehumidifier described above.

253.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

254.    This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

255.    In the event that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an express warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such an express warranty warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

256.    The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

257.    The subject product contained the defect when it left defendant's possession and control.

258.    The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

259.    Defendant breached the any alleged express warranty by providing the product with the defect described above.

260.    Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

261.    As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XV AGAINST GD MIDEA AIR CONDITIONING EQUIPMENT, LTD.: BREACH OF IMPLIED WARRANTY

262.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

263.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

264.    The term "the subject product" refers to the dehumidifier described above.

265.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

266.    This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

267.    In the event of that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an implied warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such a warranty impliedly warranted that the product would be free of defects in design and/or workmanship

and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

268. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

269. The subject product contained the defect when it left defendant's possession and control.

270. The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

271. Defendant breached the any alleged implied warranty by providing the product with the defect described above.

272. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

273. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XVI AGAINST MIDEA GROUP CO., LTD.: NEGLIGENT DESIGN AND MANUFACTURE

274. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

275. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

276. The term "the subject product" refers to the dehumidifier described above.

277. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

278. The subject product is the type of product that the defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

279. As the manufacturer and seller of the subject product, this defendant had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

280. This duty extended to all reasonably foreseeable users or consumers of the subject product and those who could be damaged from it, including the Liakonis's.

281. The subject product had a defect that makes it susceptible to failure in the form of overheating and fire and that defect manifested itself prior to and during the subject incident.

282. It was reasonably foreseeable to defendant that this product would fail in the manner that it did and that if it did fail, the failure would result in damages to and the loss of use of real and personal property of homeowners such as the Liakonis's.

283. These defects did in fact lead to the subject incident, resulting in damages to and the loss of use of the Liakonis's' real and personal property.

284. Given its superior knowledge of the product defects and inherent risk of the danger involved in its continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

285. Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.      designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer or installer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

g.      otherwise failed to use due care under the circumstances.

286.    The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of the defendant.

287.    The defendant was given reasonable notice of the loss and the claim of defect after the subject incident.

288.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

289.    As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XVII AGAINST MIDEA GROUP CO., LTD.: NEGLIGENT FAILURE TO WARN

290.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

291.    This count is asserted in the alternative to all other counts and none of the allegations of those counts are intended to be incorporated into this count.

292.    The term "the subject product" refers to the dehumidifier described above.

293.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

294.    The subject product is the type of product that defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

295.    As the manufacturer and seller of the subject product, and having superior knowledge of the product defects and inherent risk of the danger involved in their continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

296.    This duty extended to reasonably foreseeable users of the subject product, including the Liakonis's.

297.    The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of defendant.

298. This defect was known to and anticipated by defendant prior to the subject incident.

299. Well before the fire, this Defendant became aware that this was one of many Chinese-manufactured dehumidifiers that was subject to a recall.

300. Having become aware that the product was causing fires, this Defendant had an additional duty to take reasonable steps to notify purchasers of the product that it posed a fire hazard.

301. This duty reasonably extended to the Liakonis family.

302. Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.      designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

g.      failed to take steps to notify the consumers of the fire hazard posed by the product; and

otherwise failed to use due care under the circumstances.

303.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

304.    As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

### COUNT XVIII AGAINST MIDEA GROUP CO., LTD.: STRICT LIABILITY

305.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

306.    This count is in the alternative to all other counts, none of which are incorporated herein.

307.    The term "the subject product" refers to the dehumidifier described above.

308.    Defendant designed, manufactured, sold, and/or marketed the subject product.

309.    Defendant distributed and placed the subject product into the stream of commerce.

310.    Plaintiff's insureds were users and/or consumers of the subject product.

311.    The subject product was the type of product that defendant was engaged in the business of selling.

312.    Defendant expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

313.    The subject product reached the user or consumer without substantial change in the condition in which it was sold.

314.    Plaintiff's insureds used the subject product for the purpose and in the manner for which the subject product was designed and intended.

315.    The subject product that defendant sold or distributed to Plaintiff's insureds remained unmodified and unaltered from the date of its distribution and sale by defendant.

316.    On the date of the subject incident, the subject product failed and initiated a fire from the subject product.

317.    At all times since the subject product left the control of defendant, and at all times up to and including the date of the subject incident, the subject product was defective and unreasonably dangerous for the reasons set forth above.

318.    This defective and unreasonably dangerous condition resulted in the subject incident as alleged above.

319.    The subject product could have been sold or provided with an alternative design without substantially impairing the usefulness, practicality, or desirability of the subject product.

320.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

321.    As a direct and proximate result of the unreasonably defective and dangerous condition as set forth in the foregoing paragraphs, the subject product initiated a fire, causing extensive damage to Plaintiff's insureds' property.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XIX AGAINST MIDEA GROUP CO., LTD.: BREACH OF EXPRESS WARRANTY

322. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

323. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

324. The term "the subject product" refers to the dehumidifier described above.

325. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

326. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

327. In the event that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an express warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such an express warranty warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

328. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

329. The subject product contained the defect when it left defendant's possession and control.

330. The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

331. Defendant breached the any alleged express warranty by providing the product with the defect described above.

332. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

333. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XX AGAINST MIDEA GROUP CO., LTD.: BREACH OF IMPLIED WARRANTY

334. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

335. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

336. The term "the subject product" refers to the dehumidifier described above.

337. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

338.   This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

339.   In the event of that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an implied warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such a warranty impliedly warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

340.   The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

341.   The subject product contained the defect when it left defendant's possession and control.

342.   The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

343.   Defendant breached the any alleged implied warranty by providing the product with the defect described above.

344.   Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

345.   As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXI AGAINST MIDEA AMERICA CORPORATION: NEGLIGENT DESIGN AND MANUFACTURE

346.    Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

347.    This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

348.    The term "the subject product" refers to the dehumidifier described above.

349.    Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

350.    The subject product is the type of product that the defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

351.    As the manufacturer and seller of the subject product, this defendant had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

352.    This duty extended to all reasonably foreseeable users or consumers of the subject product and those who could be damaged from it, including the Liakonis's.

353.    The subject product had a defect that makes it susceptible to failure in the form of overheating and fire and that defect manifested itself prior to and during the subject incident.

354.   It was reasonably foreseeable to defendant that this product would fail in the manner that it did and that if it did fail, the failure would result in damages to and the loss of use of real and personal property of homeowners such as the Liakonis's.

355.   These defects did in fact lead to the subject incident, resulting in damages to and the loss of use of the Liakonis's' real and personal property.

356.   Given its superior knowledge of the product defects and inherent risk of the danger involved in its continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

357.   Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.   designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.   failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.   failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.   failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.   failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer or installer of the subject product;

f.   failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

g.   otherwise failed to use due care under the circumstances.

358. The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of the defendant.

359. The defendant was given reasonable notice of the loss and the claim of defect after the subject incident.

360. This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

361. As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXII AGAINST MIDEA AMERICA CORPORATION: NEGLIGENT FAILURE TO WARN

362. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

363. This count is asserted in the alternative to all other counts and none of the allegations of those counts are intended to be incorporated into this count.

364. The term "the subject product" refers to the dehumidifier described above.

365. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

366.   The subject product is the type of product that defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

367.   As the manufacturer and seller of the subject product, and having superior knowledge of the product defects and inherent risk of the danger involved in their continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

368.   This duty extended to reasonably foreseeable users of the subject product, including the Liakonis's.

369.   The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of defendant.

370.   This defect was known to and anticipated by defendant prior to the subject incident.

371.   Well before the fire, this Defendant became aware that this was one of many Chinese-manufactured dehumidifiers that was subject to a recall.

372.   Having become aware that the product was causing fires, this Defendant had an additional duty to take reasonable steps to notify purchasers of the product that it posed a fire hazard.

373.   This duty reasonably extended to the Liakonis family.

374.   Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.     designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.      failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.      failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.      failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the subject product;

f.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

g.      failed to take steps to notify the consumers of the fire hazard posed by the product; and

otherwise failed to use due care under the circumstances.

375.    This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

376.    As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

**COUNT XXIII AGAINST MIDEA AMERICA CORPORATION: STRICT LIABILITY**

377. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

378. This count is in the alternative to all other counts, none of which are incorporated herein.

379. The term "the subject product" refers to the dehumidifier described above.

380. Defendant designed, manufactured, sold, and/or marketed the subject product.

381. Defendant distributed and placed the subject product into the stream of commerce.

382. Plaintiff's insureds were users and/or consumers of the subject product.

383. The subject product was the type of product that defendant was engaged in the business of selling.

384. Defendant expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

385. The subject product reached the user or consumer without substantial change in the condition in which it was sold.

386. Plaintiff's insureds used the subject product for the purpose and in the manner for which the subject product was designed and intended.

387. The subject product that defendant sold or distributed to Plaintiff's insureds remained unmodified and unaltered from the date of its distribution and sale by defendant.

388. On the date of the subject incident, the subject product failed and initiated a fire from the subject product.

389. At all times since the subject product left the control of defendant, and at all times up to and including the date of the subject incident, the subject product was defective and unreasonably dangerous for the reasons set forth above.

390.   This defective and unreasonably dangerous condition resulted in the subject incident as alleged above.

391.   The subject product could have been sold or provided with an alternative design without substantially impairing the usefulness, practicality, or desirability of the subject product.

392.   This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

393.   As a direct and proximate result of the unreasonably defective and dangerous condition as set forth in the foregoing paragraphs, the subject product initiated a fire, causing extensive damage to Plaintiff's insureds' property.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXIV AGAINST MIDEA AMERICA CORPORATION: BREACH OF EXPRESS WARRANTY

394.   Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

395.   This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

396.   The term "the subject product" refers to the dehumidifier described above.

397.   Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

398. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

399. In the event that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an express warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such an express warranty warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

400. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

401. The subject product contained the defect when it left defendant's possession and control.

402. The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

403. Defendant breached the any alleged express warranty by providing the product with the defect described above.

404. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

405. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXV AGAINST MIDEA AMERICA CORPORATION: BREACH OF IMPLIED WARRANTY

406. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

407. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

408. The term "the subject product" refers to the dehumidifier described above.

409. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

410. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

411. In the event of that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an implied warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such a warranty impliedly warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

412. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

413. The subject product contained the defect when it left defendant's possession and control.

414. The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

415. Defendant breached the any alleged implied warranty by providing the product with the defect described above.

416. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

417. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXVI AGAINST MIDEA INTERNATIONAL TRADING CO., LTD.: NEGLIGENT DESIGN AND MANUFACTURE

418. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

419. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

420. The term "the subject product" refers to the dehumidifier described above.

421. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

422. The subject product is the type of product that the defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

423. As the manufacturer and seller of the subject product, this defendant had a duty to use reasonable care in the design, development, production, and marketing of the subject product.

424. This duty extended to all reasonably foreseeable users or consumers of the subject product and those who could be damaged from it, including the Liakonis's.

425. The subject product had a defect that makes it susceptible to failure in the form of overheating and fire and that defect manifested itself prior to and during the subject incident.

426. It was reasonably foreseeable to defendant that this product would fail in the manner that it did and that if it did fail, the failure would result in damages to and the loss of use of real and personal property of homeowners such as the Liakonis's.

427. These defects did in fact lead to the subject incident, resulting in damages to and the loss of use of the Liakonis's' real and personal property.

428. Given its superior knowledge of the product defects and inherent risk of the danger involved in its continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

429. Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a. designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b. failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.     failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.     failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.     failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer or installer of the subject product;

f.     failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

g.     otherwise failed to use due care under the circumstances.

430.   The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of the defendant.

431.   The defendant was given reasonable notice of the loss and the claim of defect after the subject incident.

432.   This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

433.   As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXVII AGAINST MIDEA INTERNATIONAL TRADING CO., LTD.: NEGLIGENT FAILURE TO WARN

434. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

435. This count is asserted in the alternative to all other counts and none of the allegations of those counts are intended to be incorporated into this count.

436. The term "the subject product" refers to the dehumidifier described above.

437. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

438. The subject product is the type of product that defendant was, at the time of its distribution to the public, in the business of designing, manufacturing, maintaining assembling, inspecting, installing, testing, marketing, packaging, labeling, selling and/or distributing.

439. As the manufacturer and seller of the subject product, and having superior knowledge of the product defects and inherent risk of the danger involved in their continued use, defendant had an ongoing duty to disclose such facts to persons who would reasonably be foreseen to incur damage from this product.

440. This duty extended to reasonably foreseeable users of the subject product, including the Liakonis's.

441. The product was in the defective and unreasonably dangerous condition at the time that it left the possession or control of defendant.

442. This defect was known to and anticipated by defendant prior to the subject incident.

443. Well before the fire, this Defendant became aware that this was one of many Chinese-manufactured dehumidifiers that was subject to a recall.

444. Having become aware that the product was causing fires, this Defendant had an additional duty to take reasonable steps to notify purchasers of the product that it posed a fire hazard.

445. This duty reasonably extended to the Liakonis family.

446. Defendant breached its aforesaid duty to Plaintiff's insureds in that it:

a.    designed the product in such a way that the product is susceptible to degradation, overheating, and fire in the course of its ordinary use;

b.    failed to properly inspect and test the design and manufacture the subject product before distributing the product *en masse* to the public;

c.    failed to warn the user/consumer of the subject product of the substantial risk of fire presented by the subject product;

d.    failed to provide the user/consumer with a product that was capable of withstanding damage to its integrity resulting from expected and typical environment and use;

e.    failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the subject product;

f.    failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

g.    failed to take steps to notify the consumers of the fire hazard posed by the product; and

otherwise failed to use due care under the circumstances.

447. This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

448.     As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, the Liakonis's sustained real and personal property damage losses, and loss of use of same, in an amount to be determined at trial, exclusive of interest and costs.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXVIII AGAINST MIDEA INTERNATIONAL TRADING CO., LTD.: STRICT LIABILITY

449.     Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

450.     This count is in the alternative to all other counts, none of which are incorporated herein.

451.     The term "the subject product" refers to the dehumidifier described above.

452.     Defendant designed, manufactured, sold, and/or marketed the subject product.

453.     Defendant distributed and placed the subject product into the stream of commerce.

454.     Plaintiff's insureds were users and/or consumers of the subject product.

455.     The subject product was the type of product that defendant was engaged in the business of selling.

456.     Defendant expected that the subject product would reach the user or consumer without substantial change in the condition in which it was sold.

457.     The subject product reached the user or consumer without substantial change in the condition in which it was sold.

458.     Plaintiff's insureds used the subject product for the purpose and in the manner for which the subject product was designed and intended.

459. The subject product that defendant sold or distributed to Plaintiff's insureds remained unmodified and unaltered from the date of its distribution and sale by defendant.

460. On the date of the subject incident, the subject product failed and initiated a fire from the subject product.

461. At all times since the subject product left the control of defendant, and at all times up to and including the date of the subject incident, the subject product was defective and unreasonably dangerous for the reasons set forth above.

462. This defective and unreasonably dangerous condition resulted in the subject incident as alleged above.

463. The subject product could have been sold or provided with an alternative design without substantially impairing the usefulness, practicality, or desirability of the subject product.

464. This count seeks damages to property other than the subject product itself, including recovery of damages to the subject home, contents within the subject home, and the additional living expenses incurred by the owner.

465. As a direct and proximate result of the unreasonably defective and dangerous condition as set forth in the foregoing paragraphs, the subject product initiated a fire, causing extensive damage to Plaintiff's insureds' property.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXIX AGAINST MIDEA INTERNATIONAL TRADING CO., LTD.: BREACH OF EXPRESS WARRANTY

466. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

467.     This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

468.     The term "the subject product" refers to the dehumidifier described above.

469.     Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

470.     This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

471.     In the event that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an express warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such an express warranty warranted that the product would be free of defects in design and/or workmanship and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

472.     The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

473.     The subject product contained the defect when it left defendant's possession and control.

474.     The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

475.     Defendant breached the any alleged express warranty by providing the product with the defect described above.

476. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

477. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XXX AGAINST MIDEA INTERNATIONAL TRADING CO., LTD.: BREACH OF IMPLIED WARRANTY

478. Plaintiff hereby incorporates and realleges by reference the allegations preceding Count I as if fully stated herein.

479. This count is in the alternative to all other counts and none of the allegations on those counts are intended to be incorporated in this count.

480. The term "the subject product" refers to the dehumidifier described above.

481. Prior to the date of the subject incident, defendant designed, manufactured, maintained, assembled, inspected, installed, tested, marketed, packaged, labeled, sold, and/or distributed the subject product.

482. This count is asserted in the event that Defendant takes the position, and can provide evidence, that there was privity of contract between it and the Liakonis's and/or that there was a warranty extended to the Liakonis's that is enforceable by the Liakonis's.

483. In the event of that Defendant asserts and can prove that there was privity of contract between it and the Liakonis's and/or that there was an implied warranty extended to the Liakonis's that is enforceable by the Liakonis's, then it would follow that such a warranty impliedly warranted that the product would be free of defects in design and/or workmanship

and/or would be merchantable and/or fit for the particular purpose for which it was sold, and the owner reasonably relied upon such warranty.

484. The subject incident was the result of a malfunction of or defect in the subject product in the course of its ordinary use.

485. The subject product contained the defect when it left defendant's possession and control.

486. The owner and users used the product for its intended purpose and/or for a purpose that was reasonably foreseeable by defendant.

487. Defendant breached the any alleged implied warranty by providing the product with the defect described above.

488. Defendant was given reasonable pre-suit notification of this matter and of the basis for the claim of defect.

489. As a direct and proximate result of defendant's breach, plaintiff has suffered the previously described damages.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable before a jury.

Respectfully submitted this 17th day of July 2020 by:

/s/ John W. Reis
John W. Reis
Tennessee Bar No. 024818
FOX ROTHSCHILD, LLP
101 N. Tryon, Suite 1300

Charlotte, NC 28246
Phone: 704-384-2692
Cell: 704-560-2554
Fax: 704-384-2800
Email: jreis@foxrothschild.com
Attorney for Plaintiff